AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
ADITHYA MANI (Bar No. 301880)
(E-Mail: Adithya_Mani@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARLON PALCONIT RAMOS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>MARLON PALCONIT RAMOS,<br><br>          Defendant. | Case No. 17-CR-00701-GW<br><br>**NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE DERIVED FROM UNLAWFUL SEARCH AND SEIZURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION; EXHIBITS**<br><br>Hearing Date: August 3, 2020<br>Hearing Time: 8:00 a.m. |

TO: UNITED STATES ATTORNEY NICOLA T. HANNA AND ASSISTANT UNITED STATES ATTORNEYS SOLOMON KIM AND INDIRA J. CAMERON-BANKS:

PLEASE TAKE NOTICE that on August 3, 2020 at 8:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable George H. Wu, United States District Judge, defendant Marlon Palconit Ramos, will bring on for hearing the following motion:

///

///

///

## MOTION

Defendant Marlon Palconit Ramos, by and through his attorney of record, Adithya Mani, hereby moves for an order suppressing evidence obtained as a result of the unlawful stop, custodial interrogation, and warrantless search by the Los Angeles Police Department ("LAPD") on September 28, 2017, including, but not limited to evidence found on Mr. Ramos's person, evidence found in Mr. Ramos's belongings and the vehicle he was driving, all evidence found inside the motel room in which Mr. Ramos resided, and any and all statements made by Mr. Ramos to law enforcement.

This motion is made pursuant to the Fourth and Fifth Amendments to the United States Constitution and is based upon the attached Memorandum of Points and Authorities, declaration, the exhibits submitted herewith, all files and records in this case, and such evidence and argument as may be presented at the hearing on this motion.

Pursuant to the Court's Order Continuing Trial (ECF No. 94), Mr. Ramos also requests the government produce *Henthorn related* materials pertaining to LAPD Officers Lyman (#38908) and Moore (#40492), by June 30, 2020.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED:  June 16, 2020          By  */s/ Adithya Mani*
                                    ADITHYA MANI
                                    Deputy Federal Public Defender
                                    Attorney for MARLON PALCONIT RAMOS

2

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF FACTS .............................................................................. 1

III. ARGUMENT ................................................................................................. 3

    A.   Mr. Ramos's Standing ...................................................................... 4

    B.   LAPD Lacked Reasonable Suspicion to Conduct an Investigatory Stop of Mr. Ramos ...................................................................................... 5

        1.   Paper Plates did not Provide LAPD with Reasonable Suspicion to Stop Mr. Ramos ................................................................ 6

    C.   The LAPD Unlawfully Arrested Mr. Ramos for Having a Legally Permissible Pocketknife, not an Illegal Switchblade ......................... 9

    D.   The Government Bears the Burden of Proving that the Warrantless Searches of Mr. Ramos's Backpack, the Vehicle he Borrowed, and the Motel Room, were Constitutionally Valid ................................... 12

        1.   There was no Lawful Basis for LAPD to Search Mr. Ramos's Backpack ...................................................................... 13

        2.   There was no Lawful Basis for LAPD to Search the Motel Room Mr. Ramos Rented ............................................... 14

        3.   There was no Lawful Basis for LAPD to Search the Vehicle Mr. Ramos Borrowed ......................................................... 14

    E.   The Evidence Obtained From the Unlawful Search and Seizure Should be Suppressed ................................................................................. 17

IV. CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*United States v. Alvarado-Zarza*,
782 F.3d 246 (5th Cir. 2015) ...................................................................... 10, 12

*United States v. Baker*,
221 F.3d 438 (3d Cir. 2000) .............................................................................. 4

*Bond v. United States*,
529 U.S. 334 (2000) ......................................................................................... 13

*United States v. Cervantes*,
703 F.3d 1135 (9th Cir. 2012) ..................................................................... 15, 16

*United States v. Colin*,
314 F.3d 439 (9th Cir. 2002) .............................................................................. 5

*United States v. Cortez*,
449 U.S. 411 (1981) ............................................................................................ 6

*Minnesota v. Dickerson*,
508 U.S. 366 (1993) .......................................................................................... 13

*United States v. Fortune*,
No. 2:15-CR-00132-RLJ, 2017 WL 1367050 (E.D. Tenn. Mar. 24,
2017) ............................................................................................................. 10, 12

*Heien v. North Carolina*,
574 U.S. 54 (2014) ....................................................................................... 10, 12

*United States v. Hill*,
752 F.3d 1029 (5th Cir. 2014) ............................................................................ 7

*United States v. Huguez-Ibarra*,
954 F.2d 546 (9th Cir. 1992) ............................................................................ 13

*United States v. Job*,
871 F.3d 852 (9th Cir. 2017) .............................................................................. 6

*Jones v. United States*,
357 U.S. 493 (1958) .......................................................................................... 13

*Katz v. United States*,
389 U.S. 347 (1967) .......................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

*United States v. Kerr*,
    817 F.2d 1384 (9th Cir. 1987) ...............................................................5, 6

*United States v. Lopez-Soto*,
    205 F.3d 1101 (9th Cir. 2000) ................................................................. 6

*United States v. See*,
    574 F.3d 309, 313 (6th Cir. 2009) ..........................................................5, 6

*United States v. Martin*,
    No. 2:09-CR-747 TS, 2010 WL 200012 (D. Utah Jan. 14, 2010) ...........13

*McDonald v. United States*,
    335 U.S. 451 (1948)..................................................................................13

*United States v. Miller*,
    821 F.2d 546 (11th Cir. 1987) .................................................................4

*United States v. Miller*,
    No. CR 17-16-BLG-SPW-TJC, 2018 WL 6052231 (D. Mont. Aug. 27,
    2018) .......................................................................................................13

*Mincey v. Arizona*,
    437 U.S. 385 (1978)..................................................................................13

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) ........................................................15, 16, 17

*United States v. Mota*,
    155 F. Supp. 3d 461 (S.D.N.Y. 2016) ................................................10, 12

*South Dakota v. Opperman*,
    428 U.S. 364 (1976)..................................................................................15

*United States v. Packer*,
    15 F.3d 654 (7th Cir. 1994) .....................................................................5

*United States v. Portillo*,
    633 F.2d 1313 (9th Cir. 1980) ..........................................................4, 5, 15

*Maryland v. Pringle*,
    540 U.S. 366 (2003)..............................................................................10, 12

# TABLE OF AUTHORITIES

Page(s)

*Rakas v. Illinois*,
    439 U.S. 128 (1978)...................................................................................................4

*Reid v. Georgia*,
    448 U.S. 438 (1980)...................................................................................................6

*United States v. Stanbridge*,
    813 F.3d 1032 (7th Cir. 2016) ...........................................................................10, 12

*Terry v. Ohio*,
    392 U.S. 1 (1968)......................................................................................................6

*United States v. Thomas*,
    211 F.3d 1186 (9th Cir. 2000) .................................................................................13

*United States v. Thomas*,
    447 F.3d 1191 (9th Cir. 2006) ...................................................................................4

*Thompson v. Louisiana*,
    469 U.S. 17 (1984)...................................................................................................13

*Warren v. Marcus*,
    78 F. Supp. 3d 1228 (N.D. Cal. 2015).......................................................................6

*Florida v. Wells*,
    495 U.S. 1 (1990)....................................................................................................16

*Wong Sun v. United States*,
    371 U.S. 471 (1963)...........................................................................................13, 17

*United States v. Uribe*,
    709 F.3d 646, 648 (7th Cir. 2013) .............................................................................8

*United States v. $45,000 in U.S. Currency*,
    749 F.3d 709, 723 (8th Cir. 2014) .............................................................................8

*United States v. Wilson*,
    7205 F.3d 720, 724 (4th Cir. 2000) ...........................................................................7

*United States v. Young*,
    573 F.3d 711 (9th Cir. 2009) ...................................................................................13

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**State Cases**

*In re Gilbert R.*,
    211 Cal. App. 4th 514 (2012) ..................................................................... 12

*People v. Hernandez*,
    45 Cal. 4th, 295, 298 (2008) ....................................................................... 9

*State v. Jestice*,
    177 Vt. 513 (Vt. 2004).............................................................................. 5, 6

*State v. Stoll*,
    239 Ariz. 292 (Ct. App. 2016)................................................................ 10, 12

**State Statutes**

California Penal Code Section 17235 ...................................................... 11, 12

California Penal Code Section 21510 ....................................................... 2, 11

**Other Authorities**

United States Constitution Fourth and Fifth Amendments ...................................*passim*

1

## I. INTRODUCTION

Defendant Marlon Ramos is charged in a five-count indictment with possessing at least fifteen unauthorized access devices, possessing the means of identification of another person during and in relation to his possession of fifteen or more unauthorized access devices, possession of counterfeit postal service keys, possession of stolen mail, and with being a felon-in-possession of a firearm. The basis for the charges against Mr. Ramos stems from evidence recovered on September 28, 2017 during an unlawful stop and search of his person, a backpack on his person, the vehicle he was driving, and a motel room in which he stayed, by officers of the Los Angeles Police Department ("LAPD"). Through this motion, Mr. Ramos maintains that the stop and search of his person, backpack, the vehicle he was driving, and the motel room where he stayed, were unlawful. Accordingly, the Court should suppress all evidence collected as a result of this unlawful conduct.

## II. STATEMENT OF FACTS

At approximately 7:30 p.m. on September 28, 2017, Mr. Marlon Ramos was in the Royal Pagoda Motel parking lot with Daniela Otero, both of them approaching the gray Mercedes Mr. Ramos had borrowed from his friend Mike. (Declaration of Marlon Ramos, ¶ 2.) When Mr. Ramos and Ms. Otero reached the gray Mercedes, LAPD Officers Moore and Lyman (the "Officers") drove their SUV perpendicular to, and in front, of the Mercedes. (Exhibit A, Officer Lyman's Police Report ("Officer Report"),[1] at RAMOS_000023; Exhibit B, Security Footage 1, at 0:00-0:35.)[2] The Officers

---

[1] The Statement of Facts is based on discovery provided by the government, including the Officer Report prepared by Officer Lyman; the attached declaration of Mr. Ramos; the security camera footage from the Royal Pagoda Motel that Mr. Ramos recorded on his camera phone; and any other evidence presented to the Court. Mr. Ramos does not adopt the assertions contained in the Officer Report, and requests an evidentiary hearing.

[2] Mr. Ramos returned to the Royal Pagoda Motel after the arrest to record onto his camera phone security camera footage from the Motel. (Declaration of Marlon Ramos, ¶ 2.) The defense is informed that the full footage from the Motel, without skips or repeats, is no longer available.

1

effectively blocked in the gray Mercedes, which Officer Moore wrote was "backed into the rear of the lot with "paper plates,'" since it could not have driven out of its parking spot without hitting the Officers' SUV.  (Ex. A, Officer Report, at RAMOS_000023; Ex. B, Security Footage 1, at 0:00-0:35.)  Officer Moore claimed that the LAPD Officers stopped Mr. Ramos because "paper plates is [sic] a common tool to avoid detection while driving a stolen car."  (Ex. A, Officer Report, at RAMOS_000023.)

After Mr. Ramos told the LAPD Officers that he borrowed the gray Mercedes from his friend Mike whose last name he did not know, the Officers asked Mr. Ramos if he had any weapons on him.  (Ex. A, Officer Report, at RAMOS_000023.)  Mr. Ramos responded that he had a knife on him, which "appeared to be in plain sight and clipped to his front right pants pocket."  (*Id.*)  The Officers removed the knife from Mr. Ramos's pants pocket for their "protection."  (*Id.*)  The Officer Report indicates the Officers detained Mr. Ramos due to his purported possession of a "spring-loaded switch blade knife in violation of [Cal. Penal Code] 21510.".  (*See id.*)[3]

At approximately 7:37 p.m., without providing an explanation in the Officer Report for searching Mr. Ramos's backpack, the Officers searched the backpack and found purported identity theft material.  (Ex. A, Officer Report, at RAMOS_000023; Ex. B, Security Footage 1, at 0:57-1:50.)  Within about three minutes, the Officers handcuffed Mr. Ramos – also not mentioned in the Officer Report.  (Ex. B, Security Footage 1, at 2:00-2:43; *See* Ex. A, Officer Report, at RAMOS_000023-24.)  After arresting Mr. Ramos, one of the Officers proceeded to open the rear door of the gray Mercedes, then the trunk of the vehicle, and then the other rear door of the vehicle, to start looking through it.  (Ex. B, Security Footage 1, at 2:58-4:00.)  The Officer Report also does not mention this search of the vehicle.  (*See* Ex. A, Officer Report.)  *Instead*, the Officer Report only states that, after additional officers had arrived, Mr. Ramos "indicated to Officer Marquez that one of the firearms he had, was possibly located

---

[3] As discussed below, the knife on Mr. Ramos's person was not an impermissible switchblade.

1   inside of the Mercedes.  Due to the vehicle being impounded, an inventory search was

2   conducted by Officer Marquez. " (Ex. A, Officer Report, at RAMOS_000024.)

3       At approximately 7:47 p.m., after searching through the gray Mercedes, the same

4   officer who searched through the Mercedes proceeded to leave the Royal Pagoda Motel

5   parking lot to find and enter Mr. Ramos's motel room.  (Ex. B, Security Footage 1, at

6   4:00-6:29.)  This officer then returns to the parking lot around approximately 7:53 p.m.

7   (Exhibit C, Security Footage 2, at 0:28-0:58.)  The Officer Report also does not

8   mention this entry into, and search of, Mr. Ramos's motel room without his consent.

9   (*See* Officer Report.)  *Instead*, the Officer Report states that *after additional officers*

10  *arrived*, Mr. Ramos allegedly told the officers that he was staying at the motel and that

11  there were possibly two firearms in the motel room, before purportedly signing a

12  consent for the officers to search the room.  (Ex. A, Officer Report, at

13  RAMOS_000023.)  A group of four LAPD officers made a second visit to search Mr.

14  Ramos's motel room again around approximately 8:36 p.m.  (Exhibit D, Security

15  Footage 3.)

16      After interviewing Daniela Otero, completing their search of the motel room, and

17  impounding the Mercedes, the Officers transported Mr. Ramos for processing and

18  interviewing.  (Ex. A, Officer Report, at RAMOS_000024.)

19                          **III. ARGUMENT**

20      The Fourth Amendment to the United States Constitution guarantees that "[t]he

21  right of the people to be secure in their persons, houses, papers, and effects, against

22  unreasonable searches and seizures, shall not be violated, and no Warrants shall issue,

23  but upon probable cause."  U.S. Const. Amend. IV.  To comply with the Constitution's

24  reasonableness requirement, government searches and seizures must be predicated by

25  warrants supported by probable cause or must fall squarely within one of a limited

26  number of exceptions to the warrant requirement.  The LAPD Officers in this case

27  violated Mr. Ramos's constitutional right to be free from unreasonable searches and

28

1  seizure because they lacked warrants and the requisite justification to act without
2  warrants.

3  **A.    Mr. Ramos's Standing**

4  An individual may claim the protection of the Fourth Amendment against
5  unlawful searches and seizures if he has a legitimate expectation of privacy in the
6  invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  An unauthorized driver of
7  a vehicle may have standing to challenge a search if he or she has received permission
8  to use the car from the authorized driver. *United States v. Thomas*, 447 F.3d 1191,
9  1199 (9th Cir. 2006); *United States v. Miller*, 821 F.2d 546, 548 (11th Cir. 1987)
10 (finding defendant had standing to challenge the search of a car borrowed from a
11 friend).  An individual's possession of a vehicle's keys indicate the individual's
12 "requisite legitimate expectation of privacy necessary to challenge the propriety of the
13 search" because he can "exclude all others, save his friend, the owner" from the
14 vehicle. *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980).  Further, "a
15 discrepancy between an individual's statement regarding the owner of the car he is
16 driving and the identity of the owner of the car as reflected by the title and registration,
17 is not enough, by itself, to destroy the driver's reasonable expectation of privacy when
18 there is clear evidence of continuing possession and control, as well as no evidence that
19 the driver obtained the car illegitimately." *United States v. Baker*, 221 F.3d 438, 443
20 (3d Cir. 2000), as amended (Sept. 21, 2000).

21 As Mr. Ramos explained to Officers Lyman and Moore, his friend permitted Mr.
22 Ramos to borrow the gray Mercedes and gave him the keys to the vehicle.  (Ex. A,
23 Officer Report, at RAMOS_000023; *see also* Declaration of Marlon Ramos, ¶ 2.)
24 Further, as Officer Lyman wrote in his report, Mr. Ramos unlocked the gray Mercedes
25 with a key and Ms. Otero entered the car from the passenger door.  (*Id.*)  Moreover,
26 Officer Lyman did not indicate in his report that Mr. Ramos did anything to suggest he
27 did not have legitimate and lawful continuing control and possession of the car.  (*Id.*)
28 Finally, Officer Lyman did not write in his report that there was any stolen vehicle

report for the gray Mercedes.  (*See* Exhibit A, at RAMOS_000023.)  Because Mr. Ramos's friend authorized him to drive the gray Mercedes with paper plates, and there was no information suggesting Mr. Ramos had stolen the vehicle, Mr. Ramos had legitimate and lawful continuing control and possession of the car and thus, a "requisite legitimate expectation of privacy necessary to challenge the propriety of the search" and seizure under the Fourth Amendment.  *Portillo*, 633 F.2d at 1317.

## B.   LAPD Lacked Reasonable Suspicion to Conduct an Investigatory Stop of Mr. Ramos

In order to stop and detain an individual without a warrant (i.e., an investigatory stop), an officer must have reasonable suspicion that the person is engaged in criminal activity.  *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002).  A consensual encounter can turn into an investigatory stop or a seizure if, in light of all of the circumstances, a reasonable person would have believed that he or she was not free to walk away.  *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009).  Courts have found such a seizure exists where law enforcement officers pull their car in front of an individual's vehicle in a parking lot so that the individual cannot move their vehicle. *See United States v. Kerr*, 817 F.2d 1384, 1386-87 (9th Cir. 1987) (finding the police encounter to be an investigatory stop because the officer pulled into and blocked a one lane driveway as the defendant was backing out);  *See*, 574 F.3d at 312 ("Given the fact that Williams blocked See's car with his marked patrol car, a reasonable person in See's position would not have felt free to leave."); *State v. Jestice*, 177 Vt. 513, 515 (Vt. 2004) (finding seizure where defendant and partner could have avoided the officer in a trailhead parking lot only by backing up and maneuvering their car around both the patrol car and the officer before squeezing through the exit); *United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994) (affirming district court's finding of an investigatory stop where the defendant was not free to leave because the officers' vehicles were parked in front of and behind the defendant's car).

5

An investigatory stop must be "justified at its inception," and not after the fact. *See Terry v. Ohio*, 392 U.S. 1, 20, 27-28 (1968); *see also Warren v. Marcus*, 78 F. Supp. 3d 1228, 1244 (N.D. Cal. 2015). To form reasonable suspicion, an officer must have "specific, articulable facts, upon which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal citation omitted); *see also United States v. Cortez*, 449 U.S. 411, 417-18 (1981) (holding that based on the totality of the circumstances "detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."). In contrast, reasonable suspicion cannot be based on an officer's "unparticularized suspicion or 'hunch[.]'" *Terry*, 392 U.S. at 27; *see also Reid v. Georgia*, 448 U.S. 438, 441 (1980) ("a belief that was more an inchoate and unparticularized suspicion or hunch than a fair inference in the light of his experience, is simply too slender a reed to support the seizure in this case.") (internal quotation marks and citation omitted). The government has the burden of establishing reasonable suspicion by a preponderance of the evidence. *See United States v. Job*, 871 F.3d 852, 860, 862 (9th Cir. 2017).

1.    **Paper Plates did not Provide LAPD with Reasonable Suspicion to Stop Mr. Ramos**

Here, the LAPD Officers conducted an investigatory stop of Mr. Ramos in the motel parking lot when Officers Lyman and Moore pulled their car in front of the vehicle Mr. Ramos borrowed before he entered it. Mr. Ramos, as a result, did not feel free to leave since he could not have easily maneuvered around the officers' vehicle to exit the parking lot. (Ex. B, Security Footage 1, at 0:00-0:35.); *Kerr*, 817 F.2d at 1386 (finding the police encounter to be an investigatory stop); *See*, 574 F.3d at 312; *Jestice*, 177 Vt. at 515.

Officer Lyman's purported reason to stop Mr. Ramos was that his vehicle had "paper plates," which he states is a common tool used by vehicle thieves to avoid

6

detection while driving a stolen car.  (Ex. A, at RAMOS_000023.)  Officer Lyman's purported reason is a hunch and does not suffice to show reasonable suspicion, however, for three reasons.

*First*, Officer Lyman does not claim that the paper plates constituted a traffic violation.  *See United States v. Hill*, 752 F.3d 1029, 1034 (5th Cir. 2014) (finding lack of reasonable suspicion where the defendant and his passenger were not offending any traffic ordinance; there was no evidence of recent crimes in the neighborhood; no reason to suspect that the defendant or his passenger were wanted by the police, and no other reason to believe that anything unusual was taking place) (internal citation and quotation marks omitted).

*Second*, like the officers in *Hill*, Officer Lyman does not articulate any evidence of recent crimes in the area or recent car thefts in the area to suspect Mr. Ramos of that crime.  Officer Lyman only states that his and Officer Moore's "training and experience have revealed that many stolen cars with paper plates are parked in Motel parking lots." (Ex. A, at RAMOS_000023.)  He provides no data that the specific neighborhood they were in saw a rise in recent car thefts.  (*See id.*)  He also does not claim that Mr. Ramos's physical characteristics matched those of a suspected thief.  (*See id.*)

*Third*, Officer Lyman does not explain why paper plates, with nothing more, suffice to make a driver a car theft suspect.  In *United States v. Wilson*, the Fourth Circuit vacated the conviction of a defendant after finding that the Fourth Amendment does not allow the police to make random suspicion-less stops of cars with temporary tags.  205 F.3d 720, 724 (4th Cir. 2000).  In *Wilson*, a federal arrest warrant had issued for the defendant on the charge that he had violated his federal supervised release.  *Id.*, at 721-22.  After the defendant evaded authorities, he purchased a used car and the dealer placed a temporary paper license tag on the car with a handwritten expiration date and the car's make and vehicle identification number on the bottom.  *Id.*, at 722. While the defendant was driving on a highway, an officer noticed the car had a temporary tag and pulled over the defendant after he could not read the expiration date

on the tag. *Id.* The Fourth Circuit found that the temporary tags did not constitute an articulable, reasonable suspicion of unlawful conduct when the officer did not allege any other suspicion of wrongdoing. *Id.*, at 724. Just as the officer in *Wilson* lacked reasonable suspicion from a mere inability to read the expiration date on a temporary plate, so too did Officer Lyman lack reasonable suspicion where he merely saw paper plates in a motel parking lot. (*See* Ex. A, at RAMOS_000023.) Also similar to the officer in *Wilson*, Officer Lyman does not allege any other suspicion of wrongdoing by Mr. Ramos. (*See* Ex. A, at RAMOS_000023.) Accordingly, the Court should follow the rationale of *Wilson* and find Officer Lyman's explanation does not constitute reasonable suspicion.

In *United States v. Uribe*, the Seventh Circuit affirmed the grant of a motion to suppress where the stop of the defendant was based on 1) the color of the vehicle the defendant was driving not matching the color indicated on the vehicle's registration and 2) the presence of an out-of-state license plate. 709 F.3d 646, 648 (7th Cir. 2013). Like Officer Lyman's report here, the officer report in that case did not include any other description of the vehicle and it did not mention the driver's pre-stop behavior. *Id.* at 648-59. The Court found a lack of reasonable suspicion "most importantly" because the government provided no information on the correlation between stolen vehicles and repainted ones. *Id.* at 652. Here, Officer Lyman similarly cites only his training and experience for believing that paper plates are a tool used for stolen vehicles. (Ex. A, at RAMOS_000023.) He provides nothing specific to support his hunch that Mr. Ramos had stolen the vehicle he had just used a key to unlock. This hunch about paper plates, like the officer's hunch about the car's color in *Uribe*, is also not reasonable suspicion.

In *United States v. $45,000 in U.S. Currency*, the Eighth Circuit reversed the denial of a motion to suppress where the officer explained that he stopped the defendant because he drove a vehicle with out-of-state license plates off of an unlikely exit for cross-country travelers. 749 F.3d 709, 723 (8th Cir. 2014). The Eighth Circuit found a

8

lack of reasonable suspicion from this explanation because it could implicate a large number of presumably innocent actors.  *Id.*  Similar to that officer, Officer Lyman here suggests he was justified in stopping Mr. Ramos because his car had paper plates and he was in a motel parking lot.  (Ex. A, at RAMOS_000023.)  But, just like the Eighth Circuit, this Court should find this explanation does not provide reasonable suspicion because many innocent people could park vehicles with paper plates in motel parking lots.

In *People v. Hernandez*, the California Supreme Court affirmed the California Court of Appeal in reversing the denial of a motion to suppress where the officer made a traffic stop where the defendant's vehicle had no license plates but a temporary operating permit that appeared "amiss." 45 Cal. 4th, 295, 298 (2008).  The California Supreme Court rejected the officer's explanation that his experience suggested that such permits are very often forged, issued for a different vehicle, or a symbol of the vehicle being stolen.  *Id.*  The California Supreme Court instead found that, because license plates were not needed if a valid temporary permit was displayed, the age of the vehicle, without additional particularized suspicion, would not have supported the stop.  Here, the Court should similarly reject Officer Lyman's hunch that vehicle paper plates symbolize a stolen vehicle.

Because the LAPD lacked reasonable suspicion to stop Mr. Ramos and instead acted on an un-particularized hunch, the stop was illegal and all evidence derived from the unconstitutional stop and search should be suppressed.

**C.    The LAPD Unlawfully Arrested Mr. Ramos for Having a Legally Permissible Pocketknife, not an Illegal Switchblade**

After stopping Mr. Ramos, the LAPD asked him if he had any weapons on his person and if he was on parole or probation.  (Ex. A, at RAMOS_000023.)  When Mr. Ramos informed them of the knife he had that the LAPD saw in "plain sight and clipped to his front right pants pocket," Officer Moore took the knife and the LAPD arrested Mr. Ramos for having a "spring-loaded switch blade knife (in violation of

9

21510 P.C.).” (Ex. A, at RAMOS_000023.) This arrest, however, was unconstitutional because Mr. Ramos's knife was a legally permissible pocketknife and not an illegal switchblade.

A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 369–70 (2003). Objectively reasonable mistakes of law can justify a certificate of probable cause. *See Heien v. North Carolina*, 574 U.S. 54, 62 (2014). Courts, however, have found that mistakes of law for unambiguous statutes are not objectively reasonable. *United States v. Alvarado-Zarza*, 782 F.3d 246, 248 (5th Cir. 2015) (reversing judgment of conviction and denial of motion to suppress because officer was not objectively reasonable in believing that an unambiguous statute that applied to turns also applied to lane changes); *United States v. Stanbridge*, 813 F.3d 1032, 1036-37 (7th Cir. 2016) (vacating conviction and overturning denial of defendant's motion to suppress because the officer was not objectively reasonable in believing that an unambiguous statute required the defendant to signal for 100 feet before pulling to a curb to park); *United States v. Mota*, 155 F. Supp. 3d 461, 474 (S.D.N.Y. 2016) (granting motion to suppress where officer was not objectively reasonable in misinterpreting statute where the plain language was evident); *State v. Stoll*, 239 Ariz. 292, 296 (Ct. App. 2016) (vacating conviction where officer was not objectively reasonable in believing an interpretation of an unambiguous statute that lacked a textual basis); *United States v. Fortune*, No. 2:15-CR-00132-RLJ, 2017 WL 1367050, at *4 (E.D. Tenn. Mar. 24, 2017), report and recommendation adopted, No. 2:15-CR-132, 2017 WL 1347575 (E.D. Tenn. Apr. 11, 2017) (granting motion to suppress where officer was not objectively reasonable in misinterpreting unambiguous turn signal statute).

Here, Officers Lyman and Moore were not objectively reasonable in misinterpreting the relevant parts of the California statute governing switchblades.

10

Under the relevant parts of California Penal Code Section 21510, individuals are not permitted to 1) carry a switchblade knife having a blade two or more inches in length upon their person or 2) possess such a knife in the passenger's or driver's area of any motor vehicle in any public place or place open to the public. Cal. Pen. Code § 21510. California Penal Code Section 17235 defines "switchblade knife" as a

> knife having the appearance of a pocketknife and includes a spring-
> blade knife, snap-blade knife, gravity knife, or any other type knife,
> the blade or blades of which are two or more inches in length and
> which can be released automatically by a flick of a button, pressure on
> the handle, flip of the wrist or other mechanical device, or is released
> by the weight of the blade or by any type of mechanism whatsoever.

Section 17235 also specifies that a "switchblade knife" "does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back towards its closed position." Cal. Pen. Code § 17235.

The knife Mr. Ramos had on his person when he was arrested is precluded from the definition of a "switchblade knife" under California Penal Code Section 17235. First, Mr. Ramos's knife has a thumb stud that an individual can apply thumb pressure to in order to open the. (Exhibit E, Image 1 of Knife; Exhibit F, Image 2 of Knife; Exhibit G Image 3 of Knife (thumb stub is circular knob protruding from blade).)[4] Second, the knife has a mechanism providing resistance that must be overcome in opening the blade, meaning the blade does not fall out and must be pressured to open. (Exhibit H, Image 4 of Knife (blade does not fall out when held upside down); Exhibit

---

[4] These images, and the other images of the knife included with this motion were taken by undersigned counsel on May 6, 2020 at a meeting with Postal Inspector Tristany Wagner and Postal Inspector Chris Siouris, with AUSAs Solomon Kim and Indira Cameron-Banks attending via telephone. These images were shown to the Postal Inspectors before conclusion of the meeting.

11

I, Image 5 of Knife (blade does not automatically fully open when pressured to open). *See In re Gilbert R.*, 211 Cal. App. 4th 514, 517 (2012) (in case involving reversal of juvenile's misdemeanor possession of a switchblade knife, the expert showed the knife had a positive detent by holding the knife upside down and shaking it without the blade descending despite the shaking). Accordingly, Mr. Ramos did not possess the illegal switchblade that LAPD relied on to arrest Mr. Ramos on September 28, 2017.

Officers Lyman and Moore were not objectively reasonable in assuming Mr. Ramos's knife was a switchblade knife because California Penal Code Section 17235 specifically details what is and is not switchblade. The government cannot claim the statute is ambiguous since the plain language specifies that a switchblade *does not* include a knife using a thumb stud for one-hand opening with a mechanism that biases the blade back towards its closed position. Because the statute is unambiguous in defining a switchblade, Officers Lyman and Moore were not objectively reasonable in making the mistake of law that resulted in Mr. Ramos's arrest. *Pringle*, 540 U.S. at 369–70 (2003). Objectively reasonable mistakes of law can justify a certificate of probable cause, but mistakes of law involving unambiguous statutes, like here, cannot. *See Heien*, 574 U.S. at 62 (2014); *see also Alvarado-Zarza*, 782 F.3d at 248; *Stanbridge*, 813 F.3d at 1036-37; *Mota*, 155 F. Supp. 3d at 474; *Stoll*, 239 Ariz. at 296; *Fortune*, 2017 WL 1367050, at *4.

Because the LAPD made a mistake of law that was not objectively reasonable when they arrested Mr. Ramos, the arrest was unlawful and the evidence obtained therefrom should be suppressed.

## D. The Government Bears the Burden of Proving that the Warrantless Searches of Mr. Ramos's Backpack, the Vehicle he Borrowed, and the Motel Room, were Constitutionally Valid

The Fourth Amendment explicitly states a preference for searches to be conducted pursuant to a search warrant. Therefore, the Supreme Court has held warrantless searches and seizures to be *per se* unreasonable unless they fall within a

"few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *Thompson v. Louisiana*, 469 U.S. 17, 19-20 (1984); *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).  Only a handful of recognized exceptions to the warrant requirement exist and the Supreme Court has stated that these few exceptions are "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958).  Further, the Supreme Court has held that it is the government's burden to demonstrate that an exception to the warrant requirement applies when a warrantless search is conducted. *McDonald v. United States*, 335 U.S. 451, 456 (1948); *Mincey v. Arizona*, 437 U.S. 385, 390-91 (1978); *see also United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992).  If the government cannot show that a particular exception applies, evidence seized as a result of an illegal warrantless search, and the fruits thereof, must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963); *United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000).

      1.    **There was no Lawful Basis for LAPD to Search Mr. Ramos's Backpack**

Mr. Ramos had a reasonable expectation of privacy in the backpack he was carrying to transport his personal items. *See Bond v. United States*, 529 U.S. 334, 338 (2000) (finding defendant had reasonable expectation of privacy in his carry-on luggage that was not on his person because travelers generally use carry-on luggage to transport personal items); *see also United States v. Young,* 573 F.3d 711, 716 (9th Cir. 2009) (defendant had reasonable expectation in luggage left in his hotel room); *United States v. Martin*, No. 2:09-CR-747 TS, 2010 WL 200012, at *9 (D. Utah Jan. 14, 2010) (defendant had reasonable expectation in a backpack because he left it in the bedroom where he resided and did not make a verbal disclaimer of his interest in the backpack); *United States v. Miller*, No. CR 17-16-BLG-SPW-TJC, 2018 WL 6052231, at *4 (D. Mont. Aug. 27, 2018), *report and recommendation adopted*, No. CR 17-16-BLG-SPW, 2018 WL 4772078 (D. Mont. Oct. 3, 2018), *appeal dismissed*, No. 18-30219, 2019 WL 1616528 (9th Cir. Jan. 30, 2019) (defendant had reasonable expectation of privacy in

the backpack he left in his motel room because "a person has an expectation of privacy in his private, closed containers").  Notwithstanding this expectation of privacy, Officer Lyman stated no justification to search through Mr. Ramos's backpack.  (*See* Ex. A, Officer Report, at RAMOS_000023.)  Accordingly, the government fails to meet its burden of establishing that one or more of the enumerated exceptions to the warrant requirement should apply to the warrantless search of Mr. Ramos's backpack.  All of the evidence recovered as a result of the warrantless search of the backpack must be suppressed.

> ### 2. There was no Lawful Basis for LAPD to Search the Motel Room Mr. Ramos Rented

Officer Lyman wrote in his report that Officer Mia obtained a signed consent from Mr. Ramos to search his motel room.  (Ex. A, Officer Report, at RAMOS_000023.)  But, as the security camera footage shows, no consent was obtained before one of the two initial arresting officers (Lyman or Moore) went to Mr. Ramos's motel room at approximately 7:47 p.m. and searched it *before* Officer Mia or any of the additional officers came to the scene.  (Ex. B, Security Footage 1, at 4:00-6:29 (one of the two initial LAPD officers again leaves the parking lot to find, enter into, and search Mr. Ramos's motel room).)  Only later, at approximately 8:36 p.m., did additional officers go search the motel room.  (Ex. D, Security Footage 3.)  Officer Mia could not have possibly spoken to Mr. Ramos about obtaining his consent to search the motel room before one of the two initial LAPD officers searched it, since Officer Mia and the additional officers were not even on the scene yet.  Accordingly, the search of the motel room was conducted without any consent.  Any evidence obtained therefrom was unlawfully obtained and should be suppressed.

> ### 3. There was no Lawful Basis for LAPD to Search the Vehicle Mr. Ramos Borrowed

As explained above in the section discussing Mr. Ramos's standing, he had the "requisite legitimate expectation of privacy" in the vehicle he borrowed "necessary to

14

challenge the propriety of the search" and seizure under the Fourth Amendment. *Portillo*, 633 F.2d at 1317. The LAPD's justification for searching the vehicle, despite not having a warrant nor consent, rests on their statement that the LAPD conducted an inventory search due to the vehicle being impounded after Mr. Ramos purportedly told Officer Marquez that the vehicle contained a firearm inside. (Ex. A, Officer Report, at RAMOS_000024.) The vehicle, however, was not yet impounded at this time, as Officer Lyman wrote two paragraphs later that "After the search of the motel room was completed, the Mercedes was *then* impounded at scene." (*Id.* (emphasis added).) Moreover, one of the Officers proceeded to look through the entire Mercedes before additional officers even arrived and before any impoundment was sought, despite not including that in the Officer Report. (Ex. B, Security Footage 1, at 2:58-4:00). Thus, the LAPD started searching the vehicle for an investigatory purpose—to find incriminating evidence—before any purported impoundment or inventory search. Accordingly, the Officer's search without consent was a criminal search and not an inventory search.

To invoke the inventory search exception to the warrant requirement, the government must show 1) that the vehicle was lawfully impounded; 2) there was an established local policy or procedure designed to produce an inventory for non-investigatory purposes; and 3) that the search adheres to the relevant local policy. *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 375-76 (1976); *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). Law enforcement officers' authority to impound a vehicle is not grounded in their investigatory role. Rather, the authority to impound private vehicles is grounded in police officers' role as "community caretakers" charged with protecting private property and ensuring the safe flow of traffic. *See Miranda v. City of Cornelius*, 429 F.3d 858, 863 (9th Cir. 2005). So, for an impoundment to be reasonable under the Fourth Amendment, it must be conducted for a "valid caretaking purpose." *Cervantes*, 703 F.3d at 1141. Where law enforcement officers lack a legitimate reason, other than a suspicion of evidence of criminal activity,

15

1  for impounding a vehicle, their conduct violates the Fourth Amendment.  *Miranda*, 429

2  F.3d at 863.

3         The government bears the burden in justifying a car's impoundment and must

4  produce evidence of a standardized policy or routine that guided the officer's decision.

5  *Cervantes*, 703 F.3d at 1141; *see Florida v. Wells*, 495 U.S. 1, 4-5 (1990).  The

6  government also has the burden of providing evidence of a standardized policy or

7  routine so that the Court can determine if the search was conducted pursuant to that

8  policy or whether any deviation from the policy was reasonable under the facts and

9  circumstances.  *See Wells*, at 4-5 (ruling that, absent an inventory policy, the search was

10  not sufficiently regulated to satisfy the Fourth Amendment and upholding the

11  suppression of the evidence found therefrom).

12         Here, the LAPD's justification for conducting a purported inventory search of the

13  gray Mercedes fails because the LAPD started searching the vehicle for an

14  investigatory purpose—to find incriminating evidence—rather than for a community

15  caretaking purpose.  Any purported impoundment and inventory search only occurred

16  *after* one officer already searched through the vehicle without any justification.  (Ex. B,

17  Security Footage 1, at 2:58-4:00.)  Even taking the Officer Report at face value, Officer

18  Lyman only wrote that an impoundment and inventory search occurred after Mr.

19  Ramos purportedly told Officer Marquez that a firearm was in the vehicle.  (Ex. A,

20  Officer Report, at RAMOS_000024.)  Moreover, Officer Lyman provided no

21  justification for the impoundment in the police report.  (*See id.*)  There is no mention of

22  the gray Mercedes blocking any traffic, since it was in a parking spot in the motel

23  parking lot.  (*See id.*)  There is no mention of the vehicle being stolen, the "hunch"

24  given for stopping Mr. Ramos in the first place.  (*See id.*)  Finally, there is no mention

25  of the LAPD actually calling a tow truck.  (*See id.*)

26         Further, Officer Marquez's decision to purportedly impound the gray Mercedes

27  without first inquiring if another person would be authorized to take the vehicle (such

28  as Mr. Ramos's then-girlfriend) was unreasonable.  If Officer Marquez sought to

16

adhere to the community caretaker exception, an attempt should have been made to inquire whether the vehicle could be released to an authorized driver before a search was conducted. *See Miranda*, 429 F.3d at 865 ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.")

The conduct of the LAPD here suggests they did not conduct a true inventory search of the gray Mercedes, but a warrantless criminal search of the vehicle.  Because the LAPD conducted an unconstitutional search of the gray Mercedes, the evidence obtained therefrom should be suppressed.

## E.   The Evidence Obtained From the Unlawful Search and Seizure Should be Suppressed

Evidence obtained in violation of the Fourth Amendment should be excluded where that evidence could not otherwise have been lawfully obtained. *Wong Sun v. United States*, 371 U.S. 471, 487-488 (1963).  Here, the LAPD were only able to obtain the evidence of Mr. Ramos's purported crimes through their illegal search and seizure of his person, his backpack, the vehicle he was driving, and the motel room where he stayed.  Accordingly, that evidence should be suppressed.

## IV. CONCLUSION

For the foregoing reasons, Mr. Ramos respectfully requests that the Court enter an order suppressing all evidence obtained from the illegal search and seizure of Mr. Ramos on September 28, 2017.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED:  June 16, 2020            By  /s/ Adithya Mani
                                 ADITHYA MANI
                                 Deputy Federal Public Defender
                                 Attorney for MARLON PALCONIT RAMOS

17